UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STEPHEN J. SHERIDAN,<br>Plaintiff, | : | |
| v. | : | CA 07-108 M |
| MICHAEL J. ASTRUE,<br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br>Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Stephen J. Sheridan ("Plaintiff") has filed a motion to reverse or remand the decision of the Commissioner. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner. With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence in the record and is not legally correct. Accordingly, based on the following analysis, I order that Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Document ("Doc.") #6) ("Motion to Reverse or Remand") be granted and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #8) ("Motion to Affirm") be denied.

## Facts and Travel

Plaintiff was born in 1971. (Record ("R.") at 74) He has a twelfth grade education. (R. at 82) In the past he worked as an appliance delivery man, a janitor, a file clerk, and in retail merchandise. (R. at 78)

Plaintiff filed applications for SSI and DIB on November 21, 2003, alleging disability since June 1, 2003, due to plantar fasciitis and tarsal tunnel syndrome. (R. at 15, 53, 246) The applications were denied initially and on reconsideration. (R. at 12-23, 35, 36, 250, 255) On December 14, 2005, an administrative law judge ("ALJ") conducted a hearing at which Plaintiff and a vocational expert ("VE") appeared and testified. (R. at 260-89) The ALJ issued a decision on February 28, 2006, finding that Plaintiff was not disabled. (R. at 23) The Appeals Council denied Plaintiff's request for review on January 17, 2007, (R. at 5-7), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 5). Plaintiff thereafter filed this action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive. Id. (citing 42 U.S.C. §

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427

405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[4] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42

(1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

[4] The ALJ stated that Plaintiff met the nondisability requirements and was insured for benefits through December 31, 2008. (R. at 17)

U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[5] 20 C.F.R. §§ 404.1521(a), 416.921(a) (2008).[6] A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528(a) (2008)("Your statements alone are not enough to establish that there is a physical or mental impairment.").

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether

---

[5] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2008). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

[6] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court hereafter will cite only to one set of regulations. See id.

the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 5. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on June 1, 2003, (R. at 17); that Plaintiff's plantar fasciitis and tarsal tunnel syndrome were severe, (id.), but not severe enough to meet or equal any listed impairment, (R. at 18); that the severity of the symptoms and degree of incapacity alleged by Plaintiff were not supported by the record and not deemed to be credible, (18-19); that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work involving lifting no more than ten pounds at a time and occasionally lifting or carrying of articles like docket files, ledgers, and small tools, (R. at 18); that the full range of sedentary work may be diminished by the effects of pain, such that Plaintiff was able to maintain attention and concentration sufficient to perform simple work tasks for an eight hour work day, assuming short breaks on average of every two hours, (id.); that Plaintiff was able to maintain attention and concentration

required for somewhat more complex or detailed tasks occasionally, but not for extended periods of time, (id.); that this RFC precluded performance of Plaintiff's past relevant work, (R. at 21); but that there were jobs existing in significant numbers in the national economy which he could perform, (R. at 22); and that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, (R. at 23).

**Errors Claimed**

Plaintiff alleges that: 1) the ALJ gave insufficient weight to the opinion of the treating and examining physician; and 2) the ALJ failed to follow the proper standards for pain evaluation and credibility pursuant to Avery v. Secretary, 797 F.2d 19 (1st Cir. 1986), and Social Security Ruling ("SSR") 96-7p. As the second claimed error is dispositive, the Court finds it unnecessary to discuss the first alleged error.

**Discussion**

The ALJ found Plaintiff not fully credible, (R. at 19), and he explained the reasons for this finding in the following paragraph:

> The undersigned [ALJ] finds the claimant's statements concerning his impairments and their impact on his ability to work are considerably more limited and restricted than is established by the medical evidence. His alleged limitations are self imposed restrictions not supported by the medical evidence. The allegations of disabling pain and fatigue are not medically supported in the medical evidence by clinical signs, symptoms, or laboratory findings (20 C.F.R. § 404.1528). **In fact, and revealing in a way that significantly undercuts the credibility of almost all of the claimant's subjective complaints, is the fact that *he has not been prescribed any medication for pain, nor does he take any over-the-counter pain relievers.*** He alleges chronic foot pain, and testified that as a result he needs to lie down all day, every day, to alleviate the pain. In a pain questionnaire completed by the treating source, the doctor clearly stated the description of pain was "per

> the patient" [R. at 223]. There is no evidence of a medically-based assessment (as opposed to symptoms, reported in the context of forms prepared for purposes of the claimant's disability claim) that the claimant could not perform at least the physical requirements of sedentary work. Nothing about the [claimant's] medical condition(s) – essentially heel and foot pain – suggests that he would require periods of recumbent rest during a work day, or that he could not perform all of the requirements of work at the sedentary level of exertion. Another factor is that the claimant's activities of daily living have not been profoundly compromised by his impairments, as evidenced by the ability to maintain a home, shop, cook, drive, and go out as necessary. No treating or examining source has imposed restrictions consistent with the claimant's allegations. This is not to say that the claimant is pain-free or does not experience a degree of difficulty in performing some tasks. However, his statements are inconsistent with the objective evidence that does not demonstrate the existence of pain and limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis. **And again, and not intending to be repetitive, it is a remarkable allegation that heel and foot pain can be so intense as to render the claimant unable to engage in even sedentary activities, constraining him essentially to recumbent rest for most of his waking hours, but never requiring the administration of even mild over-the-counter pain medication.**

(R. at 19)(italics in original)(bold added).

The record reflects that the ALJ was clearly mistaken in his belief that Plaintiff had not been prescribed any medication for pain and had not used over-the-counter pain medication. There are numerous entries reflecting the use of both prescription and non-prescription pain medication. See, e.g., (R. at 70)(listing Ultracet[7] and Lidoderm[8] as medications prescribed by Dr. DuBois

[7] Ultracet is a brand name for acetaminophen and tramadol. It is used to treat moderate to severe pain. See http://www.drugs.com/ultracet.

[8] "Lidoderm is indicated for relief of pain associated with post-herpetic neuralgia. It should be applied only to intact skin." Physicians Desk Reference 1118 (61st ed. 2007).

for foot pain); (R. at 99)(stating that Plaintiff takes Percocet 5 mg twice a day); (R. at 101)(stating that Plaintiff takes Vicodin); (R. at 107)(listing Celebrex[9] as medication prescribed by Dr. Bogue for heel pain); (R. at 114)(listing Naprosyn[10] as medication prescribed by Dr. Bogue for foot pain); (R. at 142) (reflecting prescription of Celebrex by Dr. Rekas); (R. at 158) (noting that Dr. Coppolelli instructed Plaintiff to take "Motrin 800 one b.i.d."); (R. at 190)(containing Dr. DuBois' note that Plaintiff "has not gained any relief with medication"); (R. at 192)(reflecting Dr. DuBois' note that Plaintiff was "given samples of Ultracet to take twice a day ... also given some samples of Lidoderm patch"); (R. at 224)("Rx Celebrex 200 mg qd"); (R. at 225)(reflecting Dr. Bogue's note that Plaintiff "tak[es] Celebrex 200 mg q.d."); (R. at 226)(noting that Dr. Bogue dispensed "[a]nother two-week supply of Celebrex" to the patient); (R. at 227)(noting that Dr. Bogue told Plaintiff "to stop taking Celebrex and ... wrote him a prescription for Medrol Dosepak"); (R. at 228)(reflecting that Dr. Bogue told "patient to go back to Celebrex 200 m.g. q.d."); (R. at 229)(noting that Dr. Bogue "wrote a prescription for Darvocet-N 100"); (R. at 230) (reciting that Plaintiff is "taking Celebrex 200 mg q. day ... also takes Darvocet-N 100 occasionally for pain"); (R. at 231)("The patient is using Darvocet p.r.n."); (R. at 239)(Rhode Island Hospital note instructing Plaintiff to "[t]ry Tylenol and use of walker for pain"); (R. at 241)(Rhode Island Hospital

[9] Celebrex is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis, ankylosing spondylitis, and the management of acute pain in adults. See Physicians Desk Reference 3136 (61st ed. 2007).

[10] Plaintiff appears to have spelled this medication "Napraxon," (R. at 114), but the Court concludes from other entries in the record, see, e.g., (R. at 230), that the medication referenced is Naprosyn. Naprosyn is used to relieve the signs and symptoms of rheumatoid arthritis, osteoarthritis, and ankylosing spondylitis, and it has analgesic properties. See Physicians Desk Reference 2762 (61st ed. 2007).

record reflecting that Plaintiff "has tried Ultram, Vicodin, Darvocet ... Tylenol #3, Neurontin[11]"); (R. at 243)(DDS doctor's report stating that Plaintiff has tried "various medications ... includ[ing] ibuprofen, Vicodin, Darvocet and Ultram, with no benefit").

Plaintiff also testified at the hearing that he had been prescribed medications in the past, (R. at 274), and that he had "tried Advil," (R. at 288). In fairness to the ALJ, Plaintiff testified that he was not "currently," (R. at 274), taking anything for his feet, and Plaintiff's testimony regarding what medication he had been prescribed in the past was less than clear, (R. at 274-75). Nevertheless, even allowing for Plaintiff's lack of clarity in testifying, the numerous entries in the record reflecting the prescription of pain medication should have alerted the ALJ to his misapprehension of this fact. Moreover, Plaintiff's counsel attempted to alert the ALJ at the hearing that the ALJ was mistaken in stating that Plaintiff did not take any pain medication during this time, except for a brief trial of a medication.[12] (R. at 288) Despite counsel's

---

[11] Neurontin is indicated for the management of postherpetic neuralgia in adults. See Physicians Desk Reference 2489 (61st ed. 2007).

[12] ALJ: I find it hard to, to resolve that with a, or the fact that he took no pain medication whatsoever --

Attorney: I don't think that was the, the case.

ALJ: -- during this time, except a very brief trial of a medication you said didn't do anything for him. And he said he takes no over the counter medications.

Attorney: But there was, we missed something. Did you try something that was –

Plaintiff: I have like, I had a [INAUDIBLE].

ALJ: He tried Propoxy. He said he tried Propoxy. He was given samples of it and his girlfriend had it for free.

cautionary interjection, the ALJ appears to have persisted in his mistaken belief in writing the decision. The sweeping, unqualified statements contained therein, see, e.g., (R. at 19) ("*he has not been prescribed any medication for pain*"); (id.) ("never requiring the administration of even mild over-the-counter pain medication"), cannot be reconciled with the evidence in the record which the Court has already discussed.

This is a difficult case in that apart from this substantial error there is certainly evidence in the record which could support the ALJ's finding that Plaintiff has the RFC for work at the sedentary level although not the full range of sedentary work because of the effects of pain. (R. at 18) For example, when the ALJ asked Plaintiff what had changed from the time Plaintiff felt he could not work (June 2003 to October 2005) to the point where he was able to work at Auto Zone (which work the ALJ observed appeared to be at the medium exertional level and required Plaintiff to be on his feet most of the day), (R. at 273), Plaintiff responded "[n]ot much, at all," (R. at 274). When asked by the ALJ why, given that nothing had changed, he should not conclude that Plaintiff had the ability to work during the prior period, Plaintiff responded that "I'm basically forcing

---

Plaintiff: Yes, I tried Advil –

ALJ: And it didn't do anything for him so he stopped taking it.

Plaintiff: -- stuff like that.

Attorney: Did you try some in a pudding?

Plaintiff: That was the Propoxy.

Attorney: Okay.

Plaintiff: That was the stuff that [INAUDIBLE].

Attorney: Okay. Well, he tried it.

(R. at 288)

myself to do what I'm doing now and it's still, I'm always in pain anyway. I haven't, I haven't let off to them that I'm in pain. I'm just trying to make the money as much as I can." (R. at 274)

Thus, although Plaintiff testified that from June 2003 to October 2005 his pain required him to lay down "all day, every day," (R. at 275), and that nothing had really changed since that time, (R. at 273-74), at the time of the hearing Plaintiff was able to work doing a job "that [the VE] would describe as probably medium exertional work that has [him] on his feet most of the day," (R. at 273). The ALJ validly observed at the hearing that "there are lots of jobs out there that could be done sitting down or not as stressful or demanding as what you're doing now." (R. at 274)

Ultimately, however, the Court concludes that it cannot find that the ALJ's error regarding pain medication is harmless for two reasons. First, it is plain that the ALJ relied heavily on this mistaken belief in finding Plaintiff less than fully credible. This is evident from his word choice, (R. at 19)("revealing in a way that significantly undercuts the credibility of almost all of the claimant's subjective complaints"); his use of italics, (id.)("[Plaintiff] *has not been prescribed any medication for pain, nor does he take any over-the-counter pain relievers*"); and the ALJ's repetition of the erroneous finding, (id.) ("And again, and not intending to be repetitive, it is a remarkable allegation that heel and foot pain can be so intense as to render the claimant unable to engage in even sedentary activities, constraining him essentially to recumbent rest for most of his waking hours, but never requiring the administration of even mild over-the-counter pain medication.").

Second, the sheer number of references in the record contradicting the ALJ's statements cast doubt on the thoroughness

of his review of the evidence. While the Court can understand how an ALJ could overlook one or two references in a 250 page record, here there are multiple entries reflecting repeated prescriptions and Plaintiff's use of both prescription and over-the-counter medication. The ALJ's belief that Plaintiff's pain "never requir[ed] the administration of even mild over-the-counter pain medication," (R. at 19), is clearly erroneous.

For the reasons stated above, the ALJ's determination of Plaintiff's credibility is not supported by substantial evidence and is not legally correct. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)(requiring consideration of type, dosage, effectiveness, and adverse side-effects of any pain medication); see also 20 C.F.R. § 404.1529(c)(3) (2008) (same); SSR 06-7p, 1996 WL 374186, at *3 (S.S.A.) (same).

Accordingly, for the reasons stated above, the Court concludes that this matter must be remanded for a new hearing and consideration of all the evidence in the record regarding Plaintiff's pain and the medication, both prescription and over-the-counter, which he has taken to alleviate that pain. At such hearing, the ALJ may still find that Plaintiff is not disabled, but s/he must consider the evidence in the record regarding pain medication.

**Conclusion**

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is not supported by substantial evidence in the record. Accordingly, I order that Plaintiff's Motion to Reverse or Remand be granted and that Defendant's Motion to Affirm be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 11, 2008